A06A1386. HOLDER CONSTRUCTION GROUP, LLC
v. GEORGIA TECH FACILITIES, INC.
(640 SE2d 296)

ANDREWS, Presiding Judge.

Holder Construction Group, LLC appeals from the trial court's order granting summary judgment to Georgia Tech Facilities (GTF) on Holder's claims under a construction contract. For reasons that follow, we affirm.

The record shows that Holder and GTF entered into a contract for the construction of the Georgia Tech Family Apartments project. The contract was of a type known as "fast-track" construction, under which construction is begun before the designs are completed. Under the contract at issue, Holder, the construction manager, assumed the obligation to construct the project for a stipulated sum or guaranteed

maximum price. This is known as a construction-manager-at-risk contract, under which the construction manager holds the trade contracts and is at risk for performance deficiencies, construction delays, and cost overruns. John I. Spangler III and William M. Hill, The Evolving Liabilities of Construction Managers, Construction Lawyer, January, 1999 at 30.

After construction on the project had begun, Holder experienced difficulties due to an increase in steel prices and the late delivery of steel materials. Because of these problems, Holder requested a 67-day time extension. GTF denied the request.

In September 2004, Holder filed a declaratory judgment action, contending that it was entitled to an upward adjustment of over $1 million in the contract price to account for differences between the allowances in the contract and the actual costs of the project; and was also entitled to an extension of time of not less than 63 days for completion of the project. Holder amended this complaint in December 2004 to add claims of over $3 million for breach of contract and quantum meruit/unjust enrichment.

GTF filed a motion for partial summary judgment and, after a hearing, the trial court granted the motion in part and denied it in part. The trial court reasoned that the intent of the parties was to enter into a contract whose purpose was to complete the project "in a timely fashion within the limit of available funds." To that end, the parties, who were both "sophisticated business entities," had entered into a contract that assigned the risk of loss for delays and escalated costs to Holder, the construction manager. The court held that Holder was not entitled to a time extension under the contract and had no claim for quantum meruit because an express contract controlled all of the claims at issue. With regard to requests for allowances and for change orders, the trial court held that GTF was entitled to summary judgment on all but 13 of these because Holder failed to follow the claim-filing procedure required under the contract. This appeal followed.

> In order to prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

*Mustaqeem-Graydon v. SunTrust Bank*, 258 Ga. App. 200, 205 (573 SE2d 455) (2002). When reviewing the grant of a motion for summary

judgment, we conduct a de novo review of the law and evidence. *Northside Hosp. v. Ruotanen*, 246 Ga. App. 433, 434 (541 SE2d 66) (2000).

1. We first address Holder's claim that the trial court erred in granting summary judgment on its entitlement to a time extension and its acceleration costs claims. Holder claims that it is entitled to $3.1 million of acceleration costs attributable to GTF's failure to grant its request for a time extension due to the steel crisis.

Section 3.1.18, the "Force Majeure" clause of the contract, addresses extensions due to late delivery of materials. This section provides:

> If Construction Manager shall be unable to perform or shall be delayed in the performance of any of the terms and provisions of this Agreement as a result of (i) governmental preemption of materials in connection with a national emergency declared by the President of the United States; (ii) riot, insurrection, or other civil disorder affecting performance of the Work; or (iii) unusual and extreme weather conditions constituting Acts of God, then, and in any such event, such inability or delay shall be excused, and the time for completing the affected portions of the Project . . . shall be extended. . . .

It is undisputed that the late delivery of the steel was not the result of any of the causes stated in the "Force Majeure" clause.

The contract goes on to state that late deliveries of materials, for reasons other than those set out in the "Force Majeure" clause, "do not constitute reason for extending the Date for Final Completion" and it is the construction manager's responsibility to make adequate provision for this when scheduling the work. Sections 3.1.18.2 and 3.1.18.2.2.

Accordingly, under the contract, Holder bore the risk of the late delivery of the steel because it was not due to any of the reasons set out in the "Force Majeure" clause. In addition, the contract also provides that Holder was responsible for the failure of its steel suppliers to perform and could not assert this nonperformance as an excuse "either as to timely performance or as to compliance with methods and materials designated in the Contract Documents." Section 3.7.22.

But, Holder argues that there were other delays caused by the owner which were apart from the steel crisis and for which it should have been granted extensions of time. Specifically, Holder contends that it should have been granted a time extension under Section 1.4.5. This section provides: "If the construction manager is delayed at any time in the progress of the work by an act or neglect of the owner, its

employees, the architect, or by other causes beyond the construction manager's control which the architect determines may justify delay, then the contract time will be extended."

However, Holder does not point to anywhere in the record, and we do not find, that it asked for extensions of time due to these owner-caused delays before the steel crisis. Further, the record shows that on March 10, 2004, Holder notified GTF of problems due to the delay in receiving materials, and the only reason given for requesting an extension of time was the late delivery of the steel.

In addition, Holder has introduced no evidence that but for these delays, there would have been no escalation in costs and the steel would have been delivered on time. Holder's representative was consistently unable to point out the length of any owner-caused delays. Further, Holder provides only one citation to the record in support of this claim, the affidavit of James Fry, the operations manager for Holder on the GTF project. Fry states that

> [b]ut for numerous delays caused by GTFI and the Architect, Holder may have been able to purchase and procure some or all of the steel material required for the project before the steel prices dramatically escalated. At a minimum, Holder may have been able to avoid at least some of the price increases.

This, however, is mere speculation on Holder's part, which is insufficient to sustain its burden. "[S]peculation which raises merely a conjecture or possibility is not sufficient to create even an inference of fact for consideration on summary judgment." (Citation and punctuation omitted.) *Emory Univ. v. Smith*, 260 Ga. App. 900, 902, n. 7 (581 SE2d 405) (2003).

Accordingly, the trial court did not err in granting summary judgment to GTF on this claim. Further, because we conclude that Holder was not entitled to an extension of time due to problems with the late delivery of the steel, it follows that the trial court did not err in granting summary judgment to GTF on Holder's claim for acceleration costs.

2. Likewise, GTF was entitled to summary judgment on Holder's claim for damages due to the rise in steel prices. As the trial court held, the contract did not contain an escalation clause, and Holder had already been paid from the construction contingency fund for this claim.

Holder's argument is essentially the same as that in Division 1, that but for delays caused by GTF and the architect, it would have been able to buy the steel before prices escalated. Again, Holder's only support for this claim is Fry's affidavit stating that Holder *may* have

been able to purchase some or all of the steel before the prices escalated and *may* have been able to avoid at least some of the price increases.

We reject this argument for the reasons stated in Division 1, supra. In addition, we note that although the contract did not have an escalation clause, Section 1.5.5.1 provided that costs arising from unanticipated events such as market or labor conditions are chargeable to the construction contingency fund. The record shows that the architect recommended that, pursuant to this section, money be transferred from the construction contingency funds to cover the increased cost of steel and Holder was paid $216,000 in steel escalation costs from this fund.

3. Holder also argues that the trial court erred in granting summary judgment to GTF on its claim for allowances and numerous change order requests which GTF refused to pay because it determined that Holder was not due an increase of the guaranteed maximum price. Specifically, Holder claimed $832,000 in damages as a result of three allowance reconciliations, miscellaneous steel, reinforcing steel, and roofing;[1] and, $1.7 million for 67 unpaid change order requests (CORs). The trial court held that Holder was required to follow the change order procedure of Section 3.3.5 and did not do so for all but 13 of the change order requests.

On appeal, Holder argues that its requests contained all the necessary information. In support of this contention, Holder does not cite us to the change orders themselves; but rather to the affidavit of James Fry in which he states that the CORs were sufficient.

Holder has not provided us with the numbers of the change order requests at issue, has not cited us to the page where we can find each change order request, and has not demonstrated that sufficient information was provided and that timely and proper notice was given in each instance.

"A party alleging error carries the burden of showing it affirmatively by the record, and when that burden is not met, the judgment is assumed to be correct and will be affirmed." (Footnote omitted.) *Boles v. Lee,* 270 Ga. 454, 455 (511 SE2d 177) (1999). Statements in briefs are not evidence and it is not the function of this Court to cull the record on behalf of a party in search of instances of error. *Sharp v. Greer, Klosik & Daugherty,* 256 Ga. App. 370, 372 (568 SE2d 503) (2002).

Moreover, in deposition testimony and at the hearing on the motion for summary judgment, Holder acknowledged that GTF was

---

[1] Holder acknowledges that GTF fully reconciled twenty-one of the twenty-four allowances and partially reconciled the two steel allowances.

prepared to pay some of the disputed change order requests, but Holder would not accept payment because it had also requested time extensions, which GTF refused to grant. This is an entirely different issue.

We also note that to the extent any of the CORs or allowances at issue were due to the escalation in steel prices, we have already concluded that GTF was entitled to summary judgment on these claims.

Holder also points out that the trial court determined that the proper procedure was followed in 13 of the change order requests, but included seven of them, 13, 100, 256, 287, 300.1, 331, and 332, in its grant of partial summary judgment to GTF. With the exception of 13, which GTF acknowledges is still pending, GTF argues that the trial court could have granted summary judgment on these claims because the sub-contractors have not been paid and therefore Holder has no damages. Holder had a pay-when-paid clause in its contracts with its sub-contractors which provided that Holder was not obligated to pay until it had received payment. The record also shows that Holder has already closed out the accounts with some of its vendors, negotiating settlements and receiving releases. Holder does not dispute the above, but states that it is morally obligated to pay its vendors and each change order request has some "element" of Holder's costs associated with it.

The trial court's order does not show that it considered whether and to what extent Holder can prove damages on these claims and we cannot make any determination on this issue on the record before us. Accordingly, we note that the trial court's order is internally inconsistent and this issue should be addressed before trial on Holder's remaining claims.

4. Next, Holder contends that the trial court erred in granting summary judgment on its claim for quantum meruit. Holder claims that because the final scope of work was never added to the contract as required by Section 1.6.1.2, there was no express contract governing this part of the project.

"It has long been the law in Georgia that although a party may plead in alternative counts, no recovery may be had in quantum meruit when a contract governs all claimed rights and responsibilities of the parties." (Citations omitted.) *Choate Constr. Co. v. Ideal Elec. Contractors*, 246 Ga. App. 626, 630 (541 SE2d 435) (2000). However,

> when one renders services valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof. Even if there is an express contract, if services

not contemplated by the original agreement become necessary to achieve the contractual objective and are rendered and accepted, the law implies and enforces performance of a promise to pay for such extra services.

(Citations and punctuation omitted.) *Puritan Mills, Inc. v. Pickering Constr. Co.*, 152 Ga. App. 309, 310 (262 SE2d 586) (1979).

Holder cites only to the *Puritan Mills* case as support for this claim. *Puritan Mills* is not on point. In that case, the construction company sued in quantum meruit for the removal of rock. The evidence was that this was not contemplated in the construction company's bid in that "[t]he contract between the parties clearly sets forth the work to be performed and none of the five items describing the work or the drawings reflects the removal of rock as a part of the contract." Id. at 309.

In the instant case, the completion of the project was certainly contemplated when Holder submitted its bid and the contract in this case governs all of the rights and responsibilities of the parties. Accordingly, this enumeration of error is without merit.

*Judgment affirmed. Barnes and Bernes, JJ., concur.*

DECIDED OCTOBER 3, 2006 —
RECONSIDERATION DENIED DECEMBER 8, 2006.

*Troutman Sanders, Jeffrey J. Nix, John D. Mura, Jr.*, for appellant.

*Jones Day, G. Lee Garrett, Jr., Randall M. Hawkins*, for appellee.