A06A1154. PIERCE v. WISE et al.
(639 SE2d 348)

PHIPPS, Judge.

Claiming that he lacks any other reasonable means of access to his property, Larry Pierce filed a petition in the Superior Court of Forsyth County for condemnation of a private way of necessity over the adjacent lands of John Kenneth Wise and Hopeful, LLC. Pierce also sought damages on various theories, including intentional infliction of emotional distress. After the trial court denied the parties' cross-motions for summary judgment on the issue of Pierce's necessity for the private way, the case proceeded to a jury trial. After the court granted Wise's motion for directed verdict on Pierce's claim of intentional infliction of emotional distress, the jury found that Pierce has a means of access to his property. Accordingly, the trial court entered judgment in favor of Wise and Hopeful on Pierce's petition. Pierce appeals. For reasons that follow, we affirm the grant of Wise's motion for directed verdict on Pierce's tort claim but reverse the entry of judgment against Pierce on his petition for condemnation of a private way of necessity.

Pierce owns a triangular 0.40-acre parcel of property located in Lot 31 of Lawson Manor Subdivision. He bought the property for

$10,000 in 2000. The adjacent Lots 30 and 32 are owned by Wise and Hopeful, respectively. According to Pierce, the tip of his triangular parcel touches the adjacent public roadway, Lawson Drive, at a point so narrow that it does not permit him to access the roadway without traversing either Wise's property on the one side or Hopeful's property on the other. According to Pierce, the base of the triangle gives him approximately "100 foot coverage of waterfront on Lake Lanier."

Following his purchase, the United States Army Corps of Engineers allowed Pierce to build a boat dock in Lake Lanier, thereby giving Pierce access to his property via the waterway. In addition, Wise orally gave Pierce permission to cross over Wise's Lot 30 to gain access to Pierce's Lot 31 via Lawson Drive. Subsequently, however, Wise and Hopeful sent Pierce letters instructing him to cease and desist from gaining access to his property from Lawson Drive over their properties.

Evidence was presented showing that Pierce currently accesses his property by land by parking at the end of Lawson Drive and walking about 650 to 700 feet along the shore of Lake Lanier through Army Corps of Engineers property down a path that is between four and ten feet wide depending on the height of the lake water. As a member of the public, Pierce may use this pathway and remove minor landscaping insofar as that obstructs his ability to traverse the pathway by foot. But he cannot construct improvements to the pathway to provide vehicular access.

Evidence sought to be admitted by Pierce showed that Wise's ex-wife's mother acquired ownership of Lots 30, 31, and 32 in 1986; that she had the property surveyed in 1993; and that Lot 30 (which had been a rectangular lot with adequate access to Lawson Drive) became a triangular-shaped lot with no usable road frontage only as a result of an error in the survey. Hopeful, through its owner Newt Anderson, subsequently acquired Lot 32 as a real estate investment in foreclosure proceedings. After purchasing the property, Anderson discovered that Lot 32 included property that he thought would have been in Lot 31. Wise acquired Lot 30 from his ex-wife. For over 25 years, he had used the property as a lake house and then as his primary residence.

1. Pierce first contends that the trial court erred in denying his pretrial motion for partial summary judgment, as well as his motion for directed verdict at the conclusion of the presentation of evidence at trial, on the question of necessity for the private way.

OCGA § 44-9-40 (b) permits any person or corporation who owns real estate in this state to file a petition in the superior court of the county having jurisdiction praying for a judgment condemning an easement of access, ingress, and egress over and across the property of another. To prove the necessity of such a private way, OCGA

§ 44-9-40 (b) requires the petitioner or condemnor to show he has no other reasonable means of access to his property, i.e., that he is landlocked.[1] OCGA § 44-9-40 (b) additionally authorizes the court to find that the condemnation and declaration of necessity constitute an abuse of discretion and to enjoin the proceeding based on a finding that the exercise of such right of condemnation by the condemnor is "otherwise unreasonable."[2]

*Intl. Paper Realty Corp. v. Miller*[3] addressed the issue of whether, under the statute, navigable waters alone may afford a person "reasonable" access to his property. *Miller* held that in this day and age, a navigable stream is seldom considered a reasonable way to travel to and from one's property. Accordingly, *Miller* decided to treat property to which there is no access other than by navigable waterway as property to which there is presumptively no *reasonable* means of access for purposes of proving necessity under OCGA § 44-9-40 (b).

> Thus where the condemnor establishes that the only access to his property is by way of navigable waters, he has established a prima facie case that he has no reasonable means of access under OCGA § 44-9-40 (b). The burden then shifts to the condemnee to go forward with the evidence and demonstrate that access to the navigable waters constitutes a reasonable means of access under the peculiar circumstances of the case.[4]

*Mersac, Inc. v. Nat. Hills Condo. Assn.*[5] held that where a property owner landlocks himself voluntarily or as a result of negligence in selling off surrounding property and failing to reserve an easement, condemnation of a private way of necessity over lands of another may be found to be "otherwise unreasonable" under OCGA § 44-9-40 (b). *Blount v. Chambers*[6] found declaration of a private way unreasonable where the petitioners had other, albeit more inconvenient, means of access to their property and condemnation of the private way would have greatly inconvenienced the condemnees.

Clearly, Pierce has no vehicular access to his property; his pedestrian access by land either is extremely cumbersome and inconvenient via the Lake Lanier shoreline or is limited to no more than

---

[1] *Intl. Paper Realty Corp. v. Miller*, 255 Ga. 676, 677 (341 SE2d 445) (1986).

[2] *Mersac, Inc. v. Nat. Hills Condo. Assn.*, 267 Ga. 493, 494 (1) (480 SE2d 16) (1997); see *Blount v. Chambers*, 257 Ga. App. 663 (572 SE2d 32) (2002).

[3] Supra.

[4] 255 Ga. at 677-678.

[5] Supra.

[6] Supra.

a two-foot gap between his lot and one of the adjacent lots along Lawson Drive; and his only remaining access is by the navigable waters of Lake Lanier. Unlike the petitioner in *Mersac,* Pierce did not landlock himself either voluntarily or negligently by failing to reserve an easement. Property owners' "actions in voluntarily creating their hardship are distinguishable from cases [such as this] wherein the landowner purchases property with knowledge that it is landlocked. In such a case, the purchaser's knowledge does not preclude a finding of 'strict necessity.' . . ."[7] The law of this state gives a property owner the right to condemn an easement over his neighbors' property if he needs that land as a means of ingress and egress to his property and if condemnation of the easement would not unreasonably inconvenience them. Unquestionably, Pierce needs the easement to provide vehicular access to his property. And, unlike in *Blount,* no undue inconvenience to the condemnees appears. In fact, evidence proffered by Pierce shows that all three lots were previously rectangularly shaped, but became irregularly reconfigured so as to deny his tract adequate access to Lawson Drive only as a result of a surveying error. Grant of the private way would simply restore his property's prior access. The trial court thus erred in denying Pierce's motions for partial summary judgment and directed verdict.

2. Pierce also contends that the trial court erred in granting Wise's motion for directed verdict on his claim of intentional infliction of emotional distress.

The evidence showed an acrimonious relationship between Pierce and Wise. Wise initially allowed Pierce to drive across his property but then revoked his permission and tried to buy Pierce's property for the $10,000 Pierce had paid. Pierce claims that, as a result of his refusal to sell the property, Wise embarked on a harassment campaign against him which included swearing out trespassing warrants against him and vandalizing his property. Pierce also presented evidence that during heated arguments between the two of them in the presence of a law enforcement officer Wise had taunted Pierce with racial epithets. A vile and obscene writing was also burned into the grass on Pierce's property, and his boat dock was vandalized. According to Pierce, the foregoing events caused him to become extremely depressed and seek psychological counseling.

"To prevail on a claim for intentional infliction of emotional distress, [Pierce] must demonstrate the following: (a) the conduct giving rise to the claim was intentional or reckless, (b) the conduct

---

[7] *Graff v. Scanlan,* 673 A2d 1028, 1035, n. 12 (Pa. Commw. Ct. 1996) (citation omitted).

was extreme and outrageous, (c) the conduct caused the emotional distress, and (d) the emotional distress was severe."[8]

Actionable conduct does not include insults, threats, indignities, annoyances, petty oppressions, or other vicissitudes of daily living but must go beyond all reasonable bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community. Factors include the existence of a relationship in which one person has control over another, the actor's awareness of the victim's particular susceptibility, and the severity of the resultant harm.[9]

Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law. If the evidence shows that reasonable persons might find the presence of extreme and outrageous conduct and resultingly severe emotional distress, the jury then must find the facts and make its own determination.[10]

The trial court did not err in finding Pierce's claim of intentional infliction of emotional distress unsustainable as a matter of law. Pierce presented insufficient evidence to support findings either that Wise's swearing out of trespassing warrants against him had been malicious or that Wise had been the one who had vandalized his property or written the obscenity. There is evidence that on one occasion Wise had uttered a vituperative racial epithet in referring to Pierce. Under the circumstances, and in the context made, however, it cannot be said that the natural result of utterance of the words was the causation of mental suffering so serious as to give rise to a claim for intentional infliction of emotional distress.[11] And notwithstanding Pierce's claim of severe emotional distress, he testified that he had not sought any professional treatment except for one visit to a psychologist; his testimony was unclear whether his emotional state had adversely impacted his ability to work or had motivated him to work; and he gave further testimony to the effect that, although he had lost about 20 pounds, he was happy about the weight loss. Taking

---

[8] *Ashman v. Marshall's of MA*, 244 Ga. App. 228, 229 (1) (535 SE2d 265) (2000) (footnote omitted).

[9] Id. at 229-230 (footnotes omitted).

[10] *Yarbray v. Southern Bell Tel. &c. Co.*, 261 Ga. 703, 706 (2) (409 SE2d 835) (1991) (citations omitted).

[11] Compare *Tuggle v. Wilson*, 248 Ga. 335, 337 (2) (282 SE2d 110) (1981) (where Mr. Tuggle made obscene comments to Mrs. Wilson over the telephone).

all of these factors into consideration, the trial court did not err in granting Wise's motion for directed verdict on Pierce's claim of intentional infliction of emotional distress.

3. Pierce's remaining claims of error are moot.

*Judgment affirmed in part and reversed in part. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED NOVEMBER 9, 2006 —
RECONSIDERATION DENIED DECEMBER 5, 2006 — 

*Greer, Klosik, Daugherty, Swank & McCune, Frank J. Klosik, Jr., Alina A. Krivitsky*, for appellant.
*Charles D. Joyner*, for appellees.