A08A1656. ELLISON v. BURGER KING CORPORATION et al.
(670 SE2d 469)

BLACKBURN, Presiding Judge.

In a tort suit based on allegedly violent behavior by a manager at a Burger King restaurant, Sharon Ellison, pro se, appeals the grant of summary judgment to Burger King Corporation (BKC), Janet Peterson (the restaurant manager), Southern Restaurant Hospitality, LLC (SRH), and SRH president Carl Payton, contending that material issues of fact precluded summary judgment. Because Ellison's verified complaint and deposition testimony created genuine issues of material fact as to the potential liability of the manager and SRH, summary judgment as to those defendants was not proper on all claims. With respect to Payton and BKC, the trial court correctly granted summary judgment. Accordingly, we affirm in part and reverse in part.

---

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*[1]

So viewed, the record shows that in January 2007, Ellison entered a neighborhood Burger King restaurant and waited by a cash register to order. After a period of time passed without her order being taken, Ellison said, "Hi, is anybody going to welcome me to Burger King? Somebody going to please take my order?" An employee turned and explained that the staff was busy with other customers' orders and offered to take her order. According to Ellison's deposition and verified complaint, the manager on duty then walked out from behind the counter and asked, "Why is it every time you come into the restaurant, you have to make a noise?" Ellison averred that the manager "put her hands around my neck in a semi head lock position . . . and start[ed] shaking like three times or whatever. Then [the manager] turned loose and said, 'Are you all right now?'" The employees asked if Ellison was ready to order, and Ellison uneventfully ordered a grilled chicken salad, which she was served.

Based on this exchange, Ellison filed a verified complaint against BKC (the franchisor), SRH (the franchisee and restaurant operator), Carl Payton (SRH president), and the manager, seeking damages for battery and intentional infliction of emotional distress. These defendants successfully moved for summary judgment on various grounds, giving rise to this appeal.

1. We note at the outset that Ellison's appellate brief purports to incorporate by reference arguments she made in certain briefs filed with the trial court.

[T]his practice is not approved by this Court and we decline to look in the record for matters which should have been set forth in the brief. Moreover, if we were to permit this practice a party could evade entirely the page limitations on briefs established in our Rules. See Court of Appeals Rule 24 (f). Accordingly, we have limited our review of [Ellison's] arguments to those actually made in her appellate brief.

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

*Todd v. Byrd.*[2]

2. *Summary judgment as to the restaurant manager.* Ellison's complaint essentially makes claims against the manager for battery and intentional infliction of emotional distress. In a generic order, the trial court granted summary judgment to the manager. However, as Ellison has presented evidence supporting her allegation of battery, and as the manager has not shown why she should prevail as a matter of law, we must reverse the trial court's judgment as to the battery claim against the manager. With respect to the claim for intentional infliction of emotional distress, we conclude that the trial court correctly granted summary judgment.

(a) *Battery.* Ellison's verified complaint and deposition testimony allege that the manager "placed [Ellison] in a semi head lock position[,] and began shaking . . . while still locked around the neck and head area approx[imately] [t]hree times while asking, 'Is everything ok now?' " As this case arises on appeal from a grant of summary judgment, we must view this evidence and all reasonable inferences and conclusions drawn from it in the light most favorable to the nonmovant, Ellison. See *Matjoulis v. Integon Gen. Ins. Corp.,* supra, 226 Ga. App. at 459 (1). Ellison "is to be given the benefit of all reasonable doubts in determining whether a genuine issue exists. The evidence must be construed most favorably to [her], and the trial court must give [her] the benefit of all favorable inferences that may be drawn from the evidence." *Smith v. Sandersville Production Credit Assn.*[3] Further, our role as an appellate court prohibits us from evaluating the credibility of factual allegations contained in Ellison's verified complaint and deposition testimony, even in light of an affidavit by the manager which directly contradicts Ellison's account. See *Miller v. Douglas*[4] ("[i]n motions for summary judgment, this court cannot consider the credibility of witnesses or their affidavits and a jury must resolve the question and the conflicts in the evidence which it produces").

When properly viewed in this light, Ellison's allegations give rise to a genuine issue as to whether the manager committed a battery.

> In the interest of one's right of inviolability of one's person, any unlawful touching is a physical injury to the person and is actionable. Generally speaking, an "unlawful" touching is one which is "offensive," and an "offensive" touching is one which proceeds from anger, rudeness, or lust. The

[2] *Todd v. Byrd*, 283 Ga. App. 37, 38 (1) (640 SE2d 652) (2006) (whole court).

[3] *Smith v. Sandersville Production Credit Assn.*, 229 Ga. 65, 66 (189 SE2d 432) (1972).

[4] *Miller v. Douglas*, 235 Ga. 222, 223 (219 SE2d 144) (1975).

test . . . is what would be offensive to an ordinary person not unduly sensitive as to his dignity.

(Citations and punctuation omitted.) *Newsome v. Cooper-Wiss, Inc.*[5] "A cause of action for . . . battery can be supported by even minimal touching." *Darnell v. Houston County Bd. of Ed.*[6]

"This Court has repeatedly held in battery cases that the unwanted touching itself constitutes the injury to the plaintiff." *Vasquez v. Smith.*[7] Given the relatively low threshold required to prove battery, we must conclude that Ellison has created a factual issue as to whether a battery occurred. To hold otherwise here would run contrary to this precedent and to our mandate to view all evidence in the light most favorable to Ellison as the nonmoving party. Accordingly, the trial court erred in granting summary judgment to the manager.

(b) *Intentional infliction of emotional distress.* With respect to Ellison's claim for intentional infliction of emotional distress, we conclude that the trial court correctly granted summary judgment, because Ellison failed to demonstrate that she suffered severe emotional distress.

To prove her claim of intentional infliction of emotional distress, Ellison "must show that: (1) the defendant's conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress was severe." (Punctuation omitted.) *Cook v. Covington Credit of Ga.*[8]

> Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law. If the evidence shows that reasonable persons might find the presence of extreme and outrageous conduct and resultingly severe emotional distress, the jury then must find the facts and make its own determination.

(Citation omitted.) *Yarbray v. Southern Bell &c. Co.*[9] See *Pierce v. Wise.*[10] Such legal determinations are subject to de novo review on

---

[5] *Newsome v. Cooper-Wiss, Inc.*, 179 Ga. App. 670, 672 (1) (347 SE2d 619) (1986).

[6] *Darnell v. Houston County Bd. of Ed.*, 234 Ga. App. 488, 490 (1) (506 SE2d 385) (1998).

[7] *Vasquez v. Smith*, 259 Ga. App. 79, 81 (576 SE2d 59) (2003).

[8] *Cook v. Covington Credit of Ga.*, 290 Ga. App. 825, 827-828 (2) (660 SE2d 855) (2008).

[9] *Yarbray v. Southern Bell &c. Co.*, 261 Ga. 703, 706 (2) (409 SE2d 835) (1991).

[10] *Pierce v. Wise*, 282 Ga. App. 709, 713 (2) (639 SE2d 348) (2006).

appeal in the summary judgment context. See *Lockhart v. Marine Mfg. Corp.*[11]

With respect to the severity of the emotional distress, "[t]he conduct must inflict emotional distress so severe that no reasonable person could be expected to endure it." (Citation and punctuation omitted.) *Udoinyion v. Re/Max of Atlanta.*[12] This Court has noted that

> [e]motional distress inflicted by another is not an uncommon condition; emotional distress includes all highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is *extreme* that liability arises. The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it.

(Citation and punctuation omitted; emphasis supplied and omitted.) *Peoples v. Guthrie.*[13]

Here, Ellison admitted in her deposition that the entirety of her distress amounted to the fact that she was "very embarrassed," and that she worried she would be viewed as a "troublemaker." She did not complain of physical manifestations of the distress, and she did not seek medical attention as a result of the encounter. Although embarrassment and worry are distressful, plaintiffs are "expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt." (Punctuation omitted.) *Miraliakbari v. Pennicooke.*[14] Accordingly, we conclude that Ellison failed to present evidence demonstrating that her emotional distress, i.e., embarrassment and worry, was "so severe that no reasonable [person] could be expected to endure it." See *Bridges v. Winn-Dixie Atlanta*[15] ("[i]t is for the court to determine whether on the evidence severe emotional distress can be found") (punctuation omitted). Therefore, Ellison failed to meet her burden to demonstrate her claim for intentional infliction of emotional distress, and the trial court did not err in granting summary judgment on this claim. See, e.g., *Ashman v. Marshall's &c., Inc.*[16] (upholding grant of summary judgment to a

---

[11] *Lockhart v. Marine Mfg. Corp.*, 281 Ga. App. 145, 147 (635 SE2d 405) (2006).

[12] *Udoinyion v. Re/Max of Atlanta*, 289 Ga. App. 580, 584 (657 SE2d 644) (2008).

[13] *Peoples v. Guthrie*, 199 Ga. App. 119, 121 (2) (404 SE2d 442) (1991).

[14] *Miraliakbari v. Pennicooke*, 254 Ga. App. 156, 159 (2) (561 SE2d 483) (2002).

[15] *Bridges v. Winn-Dixie Atlanta*, 176 Ga. App. 227, 230 (1) (335 SE2d 445) (1985).

[16] *Ashman v. Marshall's &c., Inc.*, 244 Ga. App. 228, 229-230 (1) (535 SE2d 265) (2000).

defendant even where a plaintiff "cried for most of the evening . . . suffered damage to her self-esteem, was embarrassed and humiliated, . . . had difficulty interacting socially, [and had been hindered in] her ability to improve her [pre-existing] limp"); *Odem v. Pace Academy*[17] (upholding grant of summary judgment where plaintiff's blood pressure was "marginally high . . . [and plaintiff] sought no professional advice from doctors or counselors and discussed the matter only informally with his minister").

3. *Grant of summary judgment as to SRH.* Ellison contends that granting summary judgment to SRH was improper (a) because material issues of fact remain as to whether SRH negligently trained Ellison, and (b) because SRH was liable for the alleged tort of its employee under a respondeat superior doctrine.

(a) *Negligent training.* In a motion for summary judgment,

the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

*Lau's Corp. v. Haskins.*[18]

Here, SRH moved for summary judgment on the ground that Ellison had demonstrated no evidence of improper training. Indeed, the record shows that Ellison provided no evidence other than her own speculation and argument.[19] This does not meet her burden of identifying specific evidence giving rise to a triable issue with respect to the training received by Peterson, because "speculation which raises merely a conjecture or possibility is not sufficient to create even an inference of fact for consideration on summary judgment." (Punctuation omitted.) *Holder Constr. Group v. Ga. Tech Facilities.*[20] Accordingly, this enumeration is without merit.

(b) *Respondeat superior.* With respect to SRH's potential vicarious liability for the manager's alleged battery,

---

[17] *Odem v. Pace Academy*, 235 Ga. App. 648, 656 (2) (510 SE2d 326) (1998).

[18] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[19] In contrast, we note that the president of SRH averred in an affidavit that he did not direct the manager or any employee to perform the acts alleged in Ellison's complaint.

[20] *Holder Constr. Group v. Ga. Tech Facilities*, 282 Ga. App. 796, 799 (1) (640 SE2d 296) (2006).

> [t]o hold a master liable for a tort committed by his servant, it must appear that at the time of the injury the servant was engaged in the master's business and not upon some private and personal matter of his own; that is, the injury must have been inflicted in the course of the servant's employment.

(Punctuation and emphasis omitted.) *Hunter v. Modern Continental Constr. Co.*[21] "The test is whether the [alleged] tort was done within scope of the actual transaction of the master's business for accomplishing the ends of his employment." *Reynolds v. L & L Mgmt.*[22]

Here, the manager's behavior in allegedly coming out from behind the counter and putting Ellison in a headlock was in response to Ellison's complaint that she was not being served. As this allegedly occurred, the manager allegedly asked "is everything ok now?" The manager, who was charged with responding to customer complaints, thus allegedly responded to a customer complaint in a violent manner while asking "is everything ok?" In light of these facts, we conclude that the manager was acting in the course of her employment.

Further, this conclusion is reinforced by the version of events contained in the manager's affidavit, in which she acknowledged gently putting her hands on Ellison's shoulders but denied any harmful or offensive conduct. As the manager explained that her intent was "to reassure [Ellison] that we valued her as a customer," we fail to discern how this could be considered outside the course of her employment. We therefore find this case to be distinct from that where a nonmanagerial employee acted outside the course of his employment by responding to insults with violence. Compare *Dowdell v. Krystal Co.*[23]

4. *Grant of summary judgment as to BKC.* With respect to potential liability on the part of BKC (franchisor), we note at the outset that the manager was not an employee of BKC, but was instead an employee of SRH (franchisee), which owns and operates the restaurant in accordance with a franchise agreement with BKC.

> It is well settled that to impose liability on a franchisor for the acts of a franchisee, a plaintiff must show that the franchisor has obligated itself to pay the franchisee's debts or that the franchisee is not a franchisee in fact but a mere

---

[21] *Hunter v. Modern Continental Constr. Co.*, 287 Ga. App. 689, 690 (652 SE2d 583) (2007).

[22] *Reynolds v. L & L Mgmt.*, 228 Ga. App. 611, 612-613 (1) (492 SE2d 347) (1997).

[23] *Dowdell v. Krystal Co.*, 291 Ga. App. 469, 470 (1) (662 SE2d 150) (2008).

agent or alter ego of the franchisor. It is undisputed that [BKC] did not obligate itself to pay the debts of [SRH]. In fact, the franchise agreement expressly prohibits [BKC] from assuming the debts of [SRH]. In this case, therefore, [BKC's] vicarious liability [would] depend on whether [SRH] was merely an agent or alter ego of [BKC].

(Citations and punctuation omitted.) *Pizza K, Inc. v. Santagata.*[24]

The test to determine whether an agency relationship exists is "whether the contract gives, or the employer assumes, the right to control the time and manner of executing the work, as distinguished from the right merely to require results in conformity to the contract." (Punctuation omitted.) *Pizza K, Inc. v. Santagata*, supra, 249 Ga. App. at 37. In the context of a franchise agreement, we are mindful that

a franchisor is faced with the problem of exercising sufficient control over a franchisee to protect the franchisor's national identity and professional reputation, while at the same time foregoing such a degree of control that would make it vicariously liable for the acts of the franchisee and its employees.

*Id.*

Here, the franchise agreement specified that SRH was an independent contractor and BKC was not an employer of SRH or its employees. SRH had the sole authority over employee hiring, working hours, benefits, wages, and employment policies. Ellison has provided no evidence that SRH or its employees were merely agents of BKC. Under these circumstances, Ellison has not met her burden to demonstrate a basis for BKC's liability for the alleged torts of a SRH employee. See *Pizza K, Inc. v. Santagata*, supra, 249 Ga. App. at 39; *Baldino's Giant Jersey Subs v. Taylor.*[25]

5. Finally, Ellison makes various arguments asserting personal liability on the part of officers and directors of SRH and BKC. However, Ellison provides no evidence of any personal connection with the alleged tort on the part of Payton (SRH president) or any officer of SRH or BKC. The evidence is undisputed that Payton was not present during the encounter and that no officer or director of either entity directed the manager to engage Ellison in the manner alleged. Therefore, to the extent Ellison challenges the judgment in the favor of officers and directors of SRH and BKC, we affirm the

---

[24] *Pizza K, Inc. v. Santagata*, 249 Ga. App. 36, 37 (547 SE2d 405) (2001).
[25] *Baldino's Giant Jersey Subs v. Taylor*, 216 Ga. App. 467, 468 (454 SE2d 599) (1995).

grant of summary judgment to the officers and directors of SRH and BKC. See, e.g., *Fields Bros. Gen. Contractors v. Ruecksties*[26] ("[g]enerally, one who merely occupies the capacity of a corporate officer cannot be held to be vicariously liable for such damages as would otherwise be recoverable from his corporate principal . . . [unless the officer] takes part in the commission of a tort") (punctuation and footnote omitted).

In sum, we reverse the grant of summary judgment to Peterson (the manager) and SRH, but only as to battery and respondeat superior for the battery. We otherwise affirm the grant of summary judgment on all other appealed claims.

*Judgment affirmed in part and reversed in part, and case remanded. Miller and Ellington, JJ., concur.*

DECIDED NOVEMBER 13, 2008 —
RECONSIDERATION DENIED NOVEMBER 25, 2008.

Sharon B. Ellison, *pro se.*
*Glover & Blount, Percy J. Blount*, for appellees.

[26] *Fields Bros. Gen. Contractors v. Ruecksties*, 288 Ga. App. 674, 677 (2) (655 SE2d 282) (2007).