# WHOLE COURT

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**March 28, 2013**

# In the Court of Appeals of Georgia

A12A2301. WILCHER v. REDDING SWAINSBORO FORD LINCOLN MERCURY, INC., et al.     RA-105

A12A2302. NORRIS v. REDDING SWAINSBORO FORD LINCOLN MERCURY, INC., et al.     RA-106

A12A2303. JOHNSON, as the Administratrix of the Estate of Shantavis Johnson v. REDDING SWAINSBORO FORD LINCOLN MERCURY, INC., et al.     RA-107

A12A2304. CASON v. REDDING SWAINSBORO FORD LINCOLN MERCURY, INC., et al.     RA-108

A12A2305. JACKSON v. REDDING SWAINSBORO FORD LINCOLN MERCURY, INC., et al.     RA-109

A12A2306. CUYLER v. REDDING SWAINSBORO FORD LINCOLN MERCURY, INC., et al.     RA-110

A12A2307. PACE v. REDDING SWAINSBORO FORD LINCOLN MERCURY, INC., et al.     RA-111

RAY, Judge.

On May 6, 2008, a 1996 Chevrolet Sport Van carrying a driver and eight passengers left the roadway and crashed into a tree after the left front tire malfunctioned and the van's driver lost control, killing one of the passengers and injuring the others. Seven of those passengers (collectively, the appellants) brought seven separate lawsuits against Dallas Stewart d/b/a S&S Auto Sales ("S&S Auto"); who sold the van to its owner prior the crash, Joe Pierce, Jr.; Redding Swainsboro Ford Lincoln Mercury, Inc. ("Redding"), who sold the van to S&S Auto; and Cooper Tire & Rubber Company ("Cooper Tire"). In their respective lawsuits, the passengers asserted a negligence cause of action against Redding, S&S Auto, and Cooper Tire, a claim for breach of warranty as to all defendants, and a strict liability claim against Cooper Tire. Redding and S&S Auto moved for summary judgment, which the trial court granted. In a subsequent order, the trial court issued a final judgment in each case pursuant to OCGA § 9-11-54 (b) as to both Redding and S&S Auto. The passengers now appeal from those orders, and the cases have been consolidated for the purposes of appeal. Finding no error, we affirm.

> Summary judgment is appropriate when no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law. On appeal, we review the grant or denial of summary judgment de novo,

2

construing the evidence and all inferences in a light most favorable to the nonmoving party.[1]

So viewed, the record shows that on September 19, 2006, Redding, a car dealership specializing in the sale of new and late model pre-owned vehicles, acquired a 1996 Chevrolet Sport passenger van (the "Van") as a trade-in from a customer. On October 5, 2006, Redding sold the Van to S&S Auto, a licensed used car dealership, in a wholesale transaction. Redding sold the Van and another vehicle "as is" with no warranties or representation as to the Van's condition.

On January 15, 2007, S&S Auto, a retail seller of used automobiles, sold the Van "as is" without any express warranty to Joe Pierce, Jr., the owner of a passenger-transportation company. Pierce never replaced or rotated the tires on the Van between the time he purchased the Van and the time of the accident.

The Van was one of three vehicles owned by Pierce that were used to transport workers to and from a local poultry processing plant, and Pierce charged each passenger a weekly fee. On May 6, 2008, sixteen months after Pierce purchased the Van, Kenneth Williams, an employee of the poultry processing plant, was driving

---

[1] (Punctuation and footnote omitted.) *McLemore v. Genuine Parts Co.*, 313 Ga. App. 641 (722 SE2d 366) (2012).

3

eight passengers in the Van when it experienced tread separation in its left-front tire which resulted in Williams losing control of the van. The Van went across the opposing lane of travel and collided with a tree. One of the passengers, Shantavious Johnson, was killed in the accident, and the other occupants, Chris Cason, Christopher Wilcher, Avia Cuyler, Randolph Norris, Daquan Johnson, Robert Jackson, and Derrick Pace, each sustained different degrees of bodily injuries.

The left front tire that failed on the Van was a passenger tire manufactured by Cooper Tire. Appellants provided the expert affidavit of Calvin Lucas, who opined that the left front tire failed because it "was loaded beyond the rated capacity for the tire when the vehicle was carrying eight passengers and a driver." Lucas further noted that the Van should have been equipped with light truck tires which are "of a more substantial construction than a passenger tire and [are] designed to carry a heavier load." Lucas also testified that in his experience, "used car dealers are aware of the necessity of inspecting tires on vehicles before selling the vehicle for correct size and construction."

Appellants also provided the affidavit of Troy Cottles, an expert in tire failure analysis. Cottles opined that his examination and analysis of the tire involved in the present accident "revealed several manufacturing defects in the subject tire which led

4

to failure of the tire," and that "[t]he subject tire was of an improper size and construction for the vehicle it was on." He explained that "[t]he tire which was on the [V]an was a passenger car tire[,] [and] [t]he tire which the [V]an was supposed to be equipped with is a Light Truck Tire." Accordingly, Cottles testified that "[i]n my opinion the overloading of the tire combined with the manufacturing and design defects caused the tread belt separation" that caused the accident.

Appellants filed suit against Redding, S&S Auto, and Cooper Tire. In their complaints, appellants alleged that Redding and S&S Auto were negligent and reckless in selling the Van "with inappropriate load bearing tires" and in "failing to warn of the danger of driving a vehicle with inappropriate load bearing tires." Appellants also asserted a breach of warranty claim against Redding and S&S Auto.[2] The trial court, in separate orders, granted summary judgment in favor of both Redding and S&S Auto on the negligence and warranty claims. The trial court then entered an order awarding a final judgment in favor of Redding and S&S Auto. On appeal,

---

[2] Appellants also asserted causes of action against Cooper Tire for negligent design, breach of warranty, and strict liability. However, the trial court did not award summary judgment in favor of Cooper Tire and thus, those issues are still pending in the trial court below.

Appellants challenge the trial court's findings that neither Redding nor S&S Auto were negligent in failing to discover that the Van was equipped with inappropriate tires.[3]

1. Appellants argue that the trial court erred in awarding summary judgment to Redding because the evidence presented created "an issue of fact as to whether Redding was negligent in not discovering a readily visible defect during its examination of the Van." Redding counters that as a wholesale dealer that was remote from the transaction between S&S Auto and Pierce, it owed no duty to Appellants, and thus "cannot be held liable for failing to discover and remedy or warn of any alleged defect with the [V]an's tires."

> The essential elements of a negligence claim are the existence of a legal duty; breach of that duty; a causal connection between the defendant's conduct and the plaintiff's injury; and damages. Thus, the threshold issue in a negligence action is whether and to what extent the defendant owes a legal duty to the plaintiff. This issue is a question of law.[4]

---

[3] None of the appellants enumerate as error the grant of summary judgment on their claims for breach of warranty.

[4] (Footnote omitted.) *Perkins v. Kranz*, 316 Ga. App. 171, 172 (1) (728 SE2d 804) (2012).

6

Under Georgia law, an automobile retailer generally has no duty to disclose a latent product defect of which it had no knowledge[5] or to test vehicles it purchases for resale for the purpose of discovering latent or concealed defects.[6] However, where the retailer makes such an inspection, it incurs a duty to conduct such inspection non-negligently.[7]

In the present case, two Redding employees examined the Van for the purpose of determining the Van's trade-in value and its re-sale value prior to selling it to S&S Auto. Appellants and Redding dispute whether this examination constituted an inspection giving rise to liability for Redding's failure to discover or disclose that the Van was equipped with inappropriate tires. However, we need not resolve that issue because we find that the trial court correctly concluded that Redding had no duty to inspect the Van for latent defects and, thus, could not be liable for negligent inspection.

---

[5] (Citation and punctuation omitted.) *Underwood v. Select Tire, Inc.*, 296 Ga. App. 805, 811 (2) (a) (676 SE2d 262) (2009).

[6] *Holman Motor Co. v. Evans*, 169 Ga. App. 610, 613-614 (2) (c) (314 SE2d 453) (1984). Accord *Thompson v. Hardy Chevrolet-Pontiac-Buick, Inc.*, 203 Ga. App. 499, 507 (417 SE2d 358) (1992) (Sognier, Chief Judge, concurring specially).

[7] *Holman*, supra.

Redding argued, and the trial court agreed, that Redding had no duty to Pierce, the consumer purchaser of the Van, or to appellants, because it was a remote wholesale dealer that did not sell the Van directly to the consumer. Redding is a dealership that primarily sells new and late model pre-owned vehicles. Redding acquired the Van through a customer trade-in and deemed it to be unfit for sale on its lot because it was older and had higher mileage. The Van was parked behind a fence, out of public view, where it remained until it and another vehicle were sold in a wholesale transaction on an "as is" basis to S&S Auto, a licensed used car dealer.

All the cases cited by Appellants involving claims against a dealer for negligent inspection of a vehicle arose from a retail sale where the vehicle was sold from a dealer directly to a consumer-purchaser or inspected by the dealer at the request of the consumer-purchaser.[8] The parties have not cited to any Georgia case involving the present scenario, where a plaintiff seeks to impose a duty not just against a dealer that offered the vehicle for public sale, but also against an intermediate dealer whose limited involvement was selling the vehicle to a retail dealer in a wholesale transaction. However, other jurisdictions that have addressed similar situations have

---

[8] See *Underwood*, supra.; *Holman*, supra.

refused to impose a duty beyond the retail dealer,[9] and this Court has stressed the importance of such an "intervening party" in Underwood.[10]

The *Underwood* case arose out of an accident that occurred when a truck's right front tire blew out causing the driver to lose control and strike another vehicle.[11] The tire was a re-grooved tire that should not have been installed on the front axle of the truck.[12] The plaintiff sued Pro-Formance, the company that sold the faulty tire, as well as the company that installed the tire.[13] The trial court granted summary judgment to Pro-Formance, relying in part on an Ohio case, *Thrash v. U-Drive-It, Company,*[14] which held that "the defendant, which sold a used car [']as is['] to a car dealer, owed no duty to the customer who bought it from the dealer."[15] In

---

[9] *Fruehauf Corp. v. Lakeside Chevrolet Co.*, 117 Cal. App. 3d 783 (II) (1981); *Ikerd v. Lapworth*, 435 F.2d 197, 201 (7th Cir.) (1970); *Thrash v. U-Drive-It,* 110 NE2d 419 (158 Ohio St. 465) (1953) (abrogated in part by *Adams v. Lift-A-Loft Corp.*, 1999 WL 33105610 (S.D. Ohio 1999).

[10] Supra. at 809 (2) (a).

[11] Id. at 807 (1).

[12] Id. at 806-807 (1).

[13] Id. at 805.

[14] Supra.

[15] *Underwood*, supra at 808 (2) (a).

*Underwood*, this Court reversed the trial court's grant of summary judgment, finding that the facts in *Thrash* did not mirror those in *Underwood*, as there was "no similar intervening party."[16] Pro-Formance sold the tire to the customer, as opposed to selling it to another dealer which in turn sold it to a customer.

The present case, unlike *Underwood*, however, does contain an intervening party, such as that set forth in *Thrash*. In *Thrash*, the plaintiff lost control of his truck and crashed when a lock ring that was not designed to fit the wheel of his car failed.[17] The truck was originally owned by the U-Drive-It Company, who sold it "as is" to the Spot Motor Company.[18] Spot Motor Company then advertised the truck for sale and sold it to the plaintiff's father.[19] The plaintiff sued U-Drive-It for negligently equipping the wheel with an improper lock ring and in failing to warn Spot Motor Company or plaintiff's father of the wheel's condition.[20]

---

[16] Id.

[17] *Thrash*, supra at at 420-421.

[18] Id. at 420.

[19] Id.

[20] Id.

The Ohio court found that "the U-Drive-It Company sold its used motor truck outright in the condition it was and assumed no obligation and exercised no control with respect to its future disposal."[21] In upholding the trial court's dismissal of U-Drive-It, the Ohio court found that U-Drive-It, as the seller of a used vehicle to a dealer, was insulated from liability, holding that

> where the owner of a used motor vehicle sells the same 'as is' to a dealer in those articles for such disposition as the dealer may make of it, such owner may not ordinarily be held liable for injuries occasioned to one who purchased the vehicle from the dealer and for injuries to another, because of faults or imperfections in the vehicle which existed or occurred during the time it was in the possession of such owner.[22]

Similarly, in the present case, Redding made no representations as to the safety of the Van or its tires to S&S Auto because it sold the Van outright, in the condition it was in, on an 'as is' basis. Further, Redding assumed no obligation and no control with respect to the Van's future disposal.

---

[21] Id. at 423.

[22] Id.

11

Appellants argue that *Thrash* is no longer good law in Ohio, citing to the unreported federal district court decision of *Adams v. Lift-A-Loft Corp.*[23] The *Adams* case, however, dealt not with the issue of whether a legal duty existed, but whether the defendant could be absolved of its duty to the plaintiff because of the intervening negligence of a third-party broke the chain of causation.[24] Citing other Ohio state cases, the *Adams* court held that in order to break the chain of causation, the defendant had to show that the intervening act of negligence was not foreseeable.[25] In light of those cases, the district court held that *Thrash* is "no longer good law, to the extent that [it] permit[s] a defendant to establish the affirmative defense of intervening/superseding cause, without first providing that an intervening act was foreseeable."[26] However, in this case, as in *Thrash* and similar cases from other jurisdictions,[27] the issue is not whether Redding can establish an affirmative defense

---

[23] 1999 WL 33105610 (S.D. Ohio 1999).

[24] Id. at *2.

[25] Id. at *9.

[26] Id. at *9-10.

[27] *Fruehauf Corp. v. Lakeside Chevrolet Co.*, 117 Cal. App. 3d 783 (II) (1981) (relying upon *Thrash*, supra); *Ikerd v. Lapworth*, 435 F.2d 197, 201 (7th Cir.) (1970) (same); *Bruce v. Martin-Marietta Corp.*, 418 F. Supp. 837, 844-845 (D.C. Okl. 1975) (same).

12

based on the intervening negligence of a third-party but whether Redding ever owed a duty in the first place.

Accordingly, we find the rationale set forth in *Thrash* to be persuasive under the facts of the present case and find that because Redding was a remote wholesale dealer that did not sell the Van directly to the consumer, but instead sold it to a licensed used car dealer without any representation as to the safety of the Van or its tires, and Redding assumed no obligation and no control with respect to the Van's future disposal, it owed no duty to Pierce or the appellants to inspect the Van in a nonnegligent manner.

Further, as more fully discussed in Division 2, infra, we find that summary judgment in favor of Redding was appropriate because there is no evidence that Pierce or the appellants knew about or relied upon Redding's inspection of the Van to their detriment. In each of the cases cited by appellants where liability was imposed on a retail dealer, there had been some element of reliance by the consumer.[28] In the present case, there is no evidence indicating that Pierce or the appellants knew about

---

[28] See *Holman*, supra; *Glynn Plymouth, Inc. v. Davis*, 141 Ga. App. 495, 499 (6) (233 SE2d 825) (1977); *J. C. Lewis Motors Co. v. Simmons*, 128 Ga. App. 113 (195 SE2d 781) (1973); *General Motors Corp. v. Davis*, 141 Ga. App. 475 (170 Se2d 848) (1969).

13

or relied upon Redding's inspection of the Van. This is particularly evident because Redding sold the Van to S&S Auto on an "as is" basis and made no representations or warranties that the Van or its tires were in a certain condition.

Based upon the above, we find that the trial court did not err in awarding summary judgment in favor of Redding.

2. Appellants contend that the trial court erred in granting summary judgment in favor of S&S Auto because questions of material fact remain regarding whether S&S Auto undertook a duty to inspect the Van prior to selling it to Pierce and whether S&S Auto negligently performed or failed to perform that inspection. We disagree.

Dallas Stewart, the partner at S&S Auto who purchased the Van from Redding, stated that when deciding whether to purchase the Van, he "did a cursory walk around to observe the general condition of the van, and . . . also took it for a test drive." Stewart testified that he "did not notice any obvious defects with the van, and there was nothing that drew [his] attention to the tires. [He] did not otherwise perform any mechanical inspection of the van, and [he] did not make any inspection of the tires. [He] did not check the brand, tread depth, or model of the tires."

Appellants contend that Stewart's "cursory walk around" and test drive of the Van prior to purchasing it constituted an inspection, such that S&S Auto owed a duty to Pierce to conduct such inspection non-negligently, and thus, was liable for failing to discover that the Van's tires were of improper size and construction. We disagree.

Under Georgia law, it is a general rule that a retailer who is not the manufacturer of an item,

> is under no obligation to test an article, purchased and sold by him, for the purpose of discovering latent or concealed defects, but that when he purchases and sells in the usual course of trade, an article in common and general use, without knowledge or its dangerous quality, and with *nothing tending reasonably to call his attention thereto*, he is not negligent in failing to exercise care to determine whether it is dangerous or not.[29]

However, if a dealer does undertake the duty to inspect or test its merchandise, it must do so non-negligently.[30] "Thus, having made an inspection, [a dealer] would be liable

---

[29] (Citation and punctuation omitted; emphasis in original.) *Holman*, supra at 613-614 (2) (c).

[30] Id.; Accord *General Motors Corp. v. Davis*, 141 Ga. App. 495, 499 (6) (233 SE2d 825) (1977).

15

for any patent defect which the inspections might reveal and could be negligent for not discovering such defects as might reasonably have been unearthed."[31]

In Georgia cases upholding a plaintiff's cause of action on a negligent inspection theory against a car dealer, the dealer conducting the inspection did so with the specified goal of discovering concealed defects in a car that would affect its safety and with the understanding that the purchaser of the vehicle knew about and would rely upon the results of such inspection. In *Glynn Plymouth, Inc. v. Davis*,[32] a dealer, *in its state safety inspection of a new car*, did not discover a brake defect which later caused a collision. This Court held that the dealer could be held liable if the defect was one which could have reasonably been discovered in the making of the state safety inspections, when the state regulations required the dealer to inspect the brakes.[33] It was clear from the language in the opinion that the passenger knew that such a state safety inspection had been conducted because the safety inspection sticker was clearly affixed to the car's window.[34] In *General Motors Corporation v.*

---

[31] (Citations and punctuation omitted.) *Holman*, supra.

[32] Supra.

[33] Id. at 487 (2) (a).

[34] Id.

16

*Davis*,[35] a dealer did not negligently conduct a *state safety inspection* and *routine pre-delivery inspection* of a truck when an undiscovered defect in the alternator caused a collision because such inspections did not require testing of an alternator. This Court held that because the dealer "neither was required by law to inspect the vehicle's alternator nor voluntarily assumed the task of doing so, it breached no duty owed to the decedent."[36] In *J. C. Lewis Motor Company v. Simmons*,[37] a dealer, in its *state safety inspection* did not discover a defect in a steering wheel which later caused a collision. Since a jury might have inferred from testimony that a proper safety inspection would have disclosed the defect, this Court affirmed the judgment against the dealer.[38] In *Holman,[39]* a dealer in its *pre-delivery and 1000-mile inspections* of a vehicle did not discover a defect in the left-front strut assembly that later caused a collision. This Court held that even though the dealer's inspections of the vehicle did not involve examining the internal components of the strut assembly, summary

---

[35] Supra.

[36] Id. at 499 (6).

[37] Supra.

[38] Id. at 114-115 (1).

[39] Supra.

17

judgment in favor of dealer was not appropriate in light of expert testimony that the dealer should have detected the defect because leaking fluid from the strut shell could be seen during the visual inspection of wheel area.[40]

In all of the negligent inspection cases cited above, the dealer conducting the inspection did so with the knowledge that the consumer would rely upon its findings because a state safety inspection sticker was affixed to the car or because the inspection was done in anticipation of a consumer purchasing the car. Unlike those cases, the undisputed evidence in this case shows that Stewart conducted his "cursory walk around to observe the general condition of the [V]an" and took it for a short test drive in order to determine if he wanted to add it S&S Auto's used car inventory. Appellants have provided no evidence that Stewart's brief examination of the Van was conducted for the benefit of a consumer or with the understanding that a consumer would rely upon the results of his inspection. Accordingly, we find that the trial court did not err in awarding summary judgment in favor of S&S Auto.

Plaintiffs argue that such a ruling creates a new element to the negligent inspection cause of action, requiring a plaintiff to prove that it knew about, and relied upon, the inspection. This is not a diversion from established Georgia law. In

_____

[40] Id.

*Underwood*,[41] this Court discussed an element of reliance in a negligent inspection case, stating that "having undertaken the duty to inspect the tires upon which [the customer] *relied"* the defendants had to perform that duty with care.[42] "Use by a third person of defective instrumentality . . . where the fact of inspection is known to the third person but the defect is unknown, *demonstrates reliance* by the third person upon the defendant's safety inspection" and by "making representations regarding the tire's quality and fitness for use on [the customer's] truck, Pro-Formance and Select Tire assumed the duty of discovery and warning."[43] Further, in *Huggins v. Aetna Cas. & Sur. Co.*,[44] our Supreme Court held that a defendant may be liable on a theory of negligent inspection if "harm is suffered because of reliance . . . upon the undertaking."[45] In *Mixon v. Georgia Central Railway, L. P.*,[46] this Court rejected a negligent inspection claim on the ground that the plaintiff "failed to offer evidence

[41] Supra.

[42] (Emphasis supplied.) Id. at 812.

[43] (Emphasis supplied.) Id. at 812-813 (quoting *Universal Underwriter Ins. Co. v. Smith*, 253 Ga. 588, 591) (1984).

[44] 245 Ga. 248 (264 SE2d 191) (1980).

[45] Id.

[46] 266 Ga. App. 365 (596 SE2d 807) (2004).

19

that for his protection, Georgia Central had voluntarily undertaken an inspection of the grate on which he fell. Nor did he offer evidence that he reasonably relied upon the performance of that inspection."[47] In the present case, the only evidence presented by the appellants that Stewart inspected the vehicle is that he conducted a "cursory walk around" prior to purchasing the vehicle from Redding. S&S Auto sold the vehicle on an "as is" basis to Pierce, and made no representations or warranties to the purchaser regarding the condition of the vehicle or its tires.

Appellants argue that this ruling will necessarily result in the dealers asserting that any inspection they conduct was not done for the benefit of the consumer. This is not the case. This ruling will certainly not apply in a situation where a dealer sells a vehicle on an "as is" basis but made representations that it or its components are in a certain condition or where an inspection was done for the benefit of the purchaser, such as a state safety inspection. Appellants argue that a question of material fact exists as to whether S&S Auto conducted an inspection, and although we find it doubtful that Stewart's "cursory walk around" prior to purchasing the Van from

---

[47] Id. See also *Stelts v. Epperson*, 201 Ga. App. 405 (411 SE2d 281) (1991) ("Where one undertakes an act which he has no duty to perform *and another reasonably relies upon that undertaking*, that act must generally be performed with ordinary or reasonable care.") (emphasis supplied; citation omitted).

20

Redding constitutes such an inspection, neither Pierce, the purchaser, nor the appellants knew that S&S Auto had engaged in such an inspection giving rise to the duty to do so non-negligently, S&S Auto sold the Van on an "as is" basis, and made no warranties or representations as to the condition of the Van. For this court to hold, that under the facts of this case, such an inspection gives rise to a duty to do so nonnegligently would be to void any attempts by a dealer to limit its liability by selling a vehicle on an "as is" basis. This would necessarily result in an implied requirement that to avoid liability, dealers must engage in full safety inspections of all vehicles sold, whether they are selling the vehicles in wholesale transactions to other car dealers, selling the vehicle for scrap parts, or selling it on an "as is" basis, thus resulting in an increase of transaction costs to both the dealer and consumer.

*Judgment affirmed in all seven cases. Andrews, P. J., Boggs and Branch, JJ., concur. Doyle, P. J., concurs as to Division 1 and dissents as to Division 2. Miller, P. J. and Phipps, P. J. dissent.*

A12A2301.   WILCHER v. REDDING SWAINSBORO FORD   MI-105

     LINCOLN MERCURY, INC., et al.

A12A2302.   NORRIS v. REDDING SWAINSBORO FORD   MI-106

     LINCOLN MERCURY, INC., et al.

A12A2303.   JOHNSON v. REDDING SWAINSBORO FORD   MI-107

     LINCOLN MERCURY, INC., et al.

A12A2304.   CASON v. REDDING SWAINSBORO FORD   MI-108

     LINCOLN MERCURY, INC., et al.

A12A2305.   JACKSON v. REDDING SWAINSBORO FORD   MI-109

     LINCOLN MERCURY, INC., et al.

A12A2306.   CUYLER v. REDDING SWAINSBORO FORD   MI-110

     LINCOLN MERCURY, INC., et al..

A12A2307.   PACE   v. REDDING SWAINSBORO FORD   MI-111

     LINCOLN MERCURY, INC., et al..

MILLER, Presiding Judge, dissenting.

I dissent from the majority's opinion because the record evidence presents a jury question as to whether the defendants acted negligently in selling a van with clearly defective tires, and therefore making the entry of summary judgment erroneous.

"Whether there has been negligence and whether there was a causal relation and proximate cause to the alleged injuries are questions of fact for jury resolution, except where the circumstances are such that they will support but one result." (Citation and punctuation omitted.) *Underwood v. Select Tire, Inc.*, 296 Ga. App. 805, 811 (2) (a) (676 SE2d 262) (2009).

Viewing the evidence in the light most favorable to the plaintiffs, the evidence shows that the accident occurred as a result of tread belt separation on the left front tire of the van. The left front-tire on the van was a passenger-rated tire that had never been changed from the time Redding Swainsboro Ford Lincoln Mercury, Inc. (Redding") acquired it as a trade-in. The subject tire was of an improper size and construction for the van because the van required light truck tires that were of more substantial construction and designated to carry a heavier load than passenger tires. An expert in tire failure analysis opined that the subject tire's tread separation was caused by the overloading of the tire, along with other defects.

Generally, the owner of a motor vehicle "must exercise reasonable care in the inspection of his machine to discover any defects that may prevent its proper operation, and is chargeable with knowledge of any defects which such inspection would disclose." (Citation and punctuation omitted.) *Cruse v. Taylor*, 89 Ga. App.

611, 615 (1) (80 SE2d 704) (1954). At the time the defendants each acquired the van, both Redding and S&S Auto became the respective owners of the van and thus, had a duty to inspect it to ensure its proper operation. Id. While Redding and S&S Auto had no obligation to test the van for the purpose of discovering latent or concealed defects, see *Holman Motor Co. v. Evans*, 169 Ga. App. 610, 613-614 (2) (c) (314 SE2d 453) (1984), in this case, one of the van's "defects" was that it had the wrong size and type of tire, which was in fact a patent defect. Notably, Cal Lucas, one of the plaintiffs' expert witnesses, testified that he had worked in the tire and automotive business for 46 years, and that he had done tire inspections for used car dealers on a frequent basis. Lucas testified that based on his experience, used car dealers are aware of the necessity of inspecting the tires on a vehicle for correct size and construction before selling the vehicle. Lucas further testified that the size and construction of a tire is readily visible to any person inspecting a tire. According to Lucas, determining a vehicle's correct tire requirements can easily be accomplished by looking at the tire placard on the inside of the driver's door or by referring to the owner's manual. Viewing the evidence in the light most favorable to the plaintiffs, Redding and S&S Auto knew or should have known the van had a patent defect – tires of the wrong size and construction – that was not obvious to the buyer and that created a dangerous

3

condition. See *Underwood*, supra, 296 Ga. App. at 810-811 (2) (a) (company that sold trailers knew or should have known that tires had patent defect – "regrooving" – because it was in the business of buying and selling vehicles).

Moreover, as to Redding, the majority notes that the parties dispute whether Redding's inspection of the van gave rise to liability for failure to discover that the van was equipped with the inappropriate tires. The majority concludes that it need not resolve the issue since the trial court correctly concluded that Redding had no duty to inspect for latent defects, it therefore could not be liable for negligent inspection. The majority misstates the law, however, regarding negligent inspection and contravenes longstanding principles that evidence in the record must be viewed in the light most favorable to the nonmoving party.

Viewed in the light most favorable to plaintiffs, the evidence shows that Redding inspected the vehicle and its tires. It is well-established that if a dealer inspects a vehicle, "it must do so nonnegligently." (Citation and punctuation omitted.) *Holman Motor Co.*, supra, 169 Ga. App. at 614 (2) (c). "[H]aving made [an] inspection[], [Redding] would be liable for any patent defect which the inspection[] might reveal and could be negligent for not discovering such defects as might reasonably have been unearthed." (Citations and punctuation omitted.) Id. As

4

discussed above, determining whether a vehicle's tires are of the appropriate size and construction is easily accomplished. One only has to look at the tire and at readily available information located within the vehicle to confirm whether the vehicle is equipped with the appropriate tires. Based on this evidence, the size and construction of the van's front left tire was a defect that could have reasonably been discovered.

Although Redding did not sell the van to the driver, this fact does not absolve Redding from its duty to protect others from an unreasonable risk of harm. "[A] legal duty may arise from the general duty one owes to all the world not to subject them to an unreasonable risk of harm. Negligence is conduct which falls below the standard established by law for the protection of others against this risk." (Citation and punctuation omitted.) *Underwood*, supra, 296 Ga. App. at 809 (2). While the majority concludes that Redding could not be held liable because of the intervening acts or omissions of S&S Auto,

> [t]he rule that an intervening act may break the causal connection between an original act of negligence and injury to another is not applicable if the nature of such intervening act was such that it could have reasonably been anticipated or foreseen by the original wrongdoer. It is not necessary that an original wrongdoer shall anticipate or foresee the details of a possible injury that may result from his negligence.

5

(Citation and punctuation omitted.) *Coleman v. Atlanta Obstetrics & Gynecology Group*, 194 Ga. App. 508, 510-511 (390 SE2d 856), aff'd, 260 Ga. 569 (398 SE2d 16) (1990). Whether Redding's alleged wrongful acts were the proximate cause of the plaintiffs' injuries is a question of fact that should be reserved for the jury's determination. See *Smith v. Southeastern Fidelity Ins. Co.*, 258 Ga. 15, 16 (3) (365 SE2d 105) (1988) (issues of proximate causation generally are reserved for the jury and are not appropriate for summary adjudication).

Since fact issues remain regarding the defendants' alleged negligence and causation, I would reverse the grant of summary judgment to the defendants.

I am authorized to state that Presiding Judge Phipps joins in this dissent and Presiding Judge Doyle joins in this dissent as to Division 2.