**SECOND DIVISION
ANDREWS, P. J.,
MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 8, 2014**

# In the Court of Appeals of Georgia

A14A1172. THOMAS et al. v. SUMMERS.

ANDREWS, Presiding Judge.

This appeal arises from an action Jere Summers commenced against David and Sondra Thomas to recover on a promissory note. The Thomases appeal the trial court's order granting Summers' motion for summary judgment, arguing that summary judgment was improper because Summers failed to establish that no material issues of fact remain as to their affirmative defenses of accord and satisfaction, release, and statute of limitation. We conclude that material issues of fact exist as to the Thomases' accord and satisfaction defense and therefore reverse.

"'Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c).' *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). We review a trial court's grant of

summary judgment de novo, construing the evidence, and all reasonable conclusions and inferences drawn from it, in favor of the nonmovant. Id.

*Clay v. Oxendine*, 285 Ga. App. 50 (645 SE2d 553) (2007).

So viewed, the record shows that Summers formerly was married to Sondra Thomas' mother, Martha Summers. On May 2, 1994, Jere and Martha Summers loaned the Thomases $25,000 by delivering to them a cashier's check in that amount. Summers stated in an affidavit that on the same date, the Thomases executed and delivered a promissory note payable to him and his wife. A copy of a May 2, 1994 promissory note payable to the Summers and signed by the Thomases was attached as an exhibit to Summers' affidavit. The note does not specify an interest rate prior to maturity but provides for an eight percent interest rate following maturity "together with all costs of collection, including fifteen percent . . . of the principal and interest as attorney's fees if collected by law or though an attorney at law." The note states that it is "[g]iven under the hand and seal of each of the undersigned," and the notation "(seal)" appears after the Thomases' signatures.

Sondra Thomas stated in an affidavit that she recalled that she and her husband signed a document regarding the loan in May 1994 but that she could not recall whether the copy of the promissory note Summers provided accurately represented

2

the document they signed. The Thomases made a $1500 interest payment on the loan on May 18, 1995. Sondra Thomas stated that her mother died in February 1996, and that, at that time, the Summers owned a home in Tennessee where Summers' mother lived. Sondra Thomas testified that the property was regarded as her mother's separate property and that during her mother's lifetime, her mother made it clear that she wished for the property to be given to her daughters. According to Sondra Thomas, she and her two sisters had a discussion with Summers following her mother's death in which Summers stated that he wished to honor his wife's wishes regarding the property. Summers estimated the value of the property was $75,000, and since he did not wish to move his mother out of the home, he offered to pay each of the sisters $25,000 immediately. They also discussed splitting the proceeds among the sisters when the property was sold. Sondra Thomas stated that she reminded Summers that she and her husband owed him $25,000 and asked him to forgive the debt in lieu of giving her any proceeds from the sale of the property. Sondra Thomas stated that Summers agreed to this proposal. Sondra Thomas' sister submitted an affidavit in which she corroborated Sondra Thomas' account of her agreement with Summers regarding the loan.

Sondra Thomas also stated that later in 1996, Summers told her that although the loan was forgiven, she and her husband still owed him an interest payment for the previous year, so she wrote him a check for $1500. The Thomases have made no further payments on the loan since that time. Sondra Thomas stated that she heard nothing from Summers about the loan until 2010, when he called and asked that it be repaid. She reminded him of their prior agreement, and Summers became irate. In June 2011, Summers, through counsel, declared the note due and payable and provided the Thomases 60 days to pay the note in full, with interest calculated at the 7 percent legal rate. When no payment was forthcoming, Summers commenced this action.

1. The Thomases maintain that Summers' motion for summary judgment failed to address their affirmative defenses and that, as such, the burden of producing evidence to support the defenses never shifted to them. This argument lacks merit.

In an action to enforce a promissory note, the plaintiff establishes a prima facie right to judgment as a matter of law by producing the note and showing that it was executed by the defendant, who is in default. *Secured Realty Investment v. Bank of North Georgia*, 314 Ga. App. 628, 629 (1) (725 SE2d 336) (2012); *Brown v. McGriff*,

4

256 Ga. App. 44, 45 (1) (567 SE2d 374) (2002). Summers' motion for summary judgment established his prima facie right to recover on the promissory note at issue.

OCGA § 11-3-308 (a) provides in relevant part:

> In an action with respect to an instrument, the authenticity of and authority to make each signature on the instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized.

Here, the third paragraph of Summers' complaint stated that the Thomases executed and delivered the promissory note at issue on May 2, 1994, the note did not state an interest rate, and a copy of the promissory note was attached as an exhibit. David and Sondra Thomas, who filed separate answers, each denied the allegations in paragraph three. Even if their denials of the third paragraph as a whole are construed as specifically denying the authenticity of the signatures on the note, the evidence created no material dispute of fact as to this issue.

Before Summers was obligated to submit evidence with respect to the authenticity of the signatures, the Thomases were required to present evidence showing the grounds for denying their authenticity. See Uniform Commercial Code

5

§ 3-308, cmt. 1 ("The defendant is therefore required to make some sufficient showing of the grounds for the denial before the plaintiff is required to introduce evidence. . . . Until introduction of such evidence the presumption [of authenticity] requires a finding for the plaintiff."). Summers' affidavit nonetheless affirmatively stated that the Thomases executed the promissory note on May 2, 1994, payable to him and his deceased wife, and attached a copy of the note. In her response affidavit, Sondra Thomas admitted borrowing $25,000 from the Summers and stated that she signed a document regarding the loan but could not recall whether the photocopied promissory note Summers provided "accurately represents the document we signed." Sondra Thomas' equivocal testimony was insufficient to overcome the presumption of the signatures' authenticity or to rebut Summers testimony regarding the execution of the note. See *Hogan v. Pearson*, 190 Ga. App. 787, 788 (2) (380 SE2d 82) (1989) (appellant's equivocal testimony, in which he did not deny signing bill of sale but testified that the signature on it did not look like his, was insufficient to create issue of fact as to authenticity of his signature).

Summers produced the promissory note and established its execution, and it is undisputed that the Thomases have made only two interest payments on the note. Summers established his prima facie right to recover, and the burden of production

6

then shifted to the Thomases to produce or point to evidence in the record establishing an affirmative defense. *Secured Realty Investment*, supra, 314 Ga. App. at 629 (1); *Big Sandy Partnership, LLC v. Branch Banking & Trust Co.*, 313 Ga. App. 871, 872 (1) (723 SE2d 82) (2012). Contrary to the Thomases' argument, they were not excused from shouldering their burden because Summers failed to address their affirmative defenses. Summers pierced the statute of limitation defense because the promissory note attached to his affidavit was executed under seal. The statute of limitation applicable to an action on an instrument under seal is 20 years. OCGA § 9-3-23. Summers commenced his action on the May 1994 note in October 2011, within that time period. The Thomases' defenses of release and accord and satisfaction were based on the allegations in their answers that following his wife's death, Summers "offered to convey a parcel of rental property, having been previously owned solely by the late Ms. Summers, to [Sondra Thomas] and her sisters," but "[i]n lieu of said conveyance,[Summers] agreed to sell the property and release [Sondra Thomas] from any debt owed him under the note." Summers was not required to submit evidence disproving these affirmative defenses but rather could simply rely on the lack of any evidence in the record supporting them at the time the motion was filed. See *Big Sandy Partnership, LLC*, supra, 313 Ga. App. at 872 (1).

7

In any event, Summers implicitly denied the agreement to forgive the debt in his affidavit, which describes the relevant sequence of events, states that Sondra Thomas' mother "is deceased and by her last will and testament left all of her property, including the Note, to [him]," and acknowledges no discussion about conveying property to Sondra Thomas and her sisters or forgiving the debt.

2. The Thomases also argue that even if Summers succeeded in shifting the burden of production to them, their evidence raised a material issue of fact regarding their defense of accord and satisfaction. We agree.

"Accord and satisfaction occurs where the parties to an agreement, by a subsequent agreement, have satisfied the former agreement, and the latter agreement has been executed." OCGA § 13-4-101; see also *Bartosz v. Chapparal Enterprises*, 271 Ga. App. 246, 249 (2) (609 SE2d 185) (2005) (accord and satisfaction "takes place where the parties satisfy one agreement by making and carrying out a new one"). Whether there has been accord and satisfaction is generally a question for the trier of fact. *Progressive Cas. Ins. Co. v. Evans*, 276 Ga. App. 594, 595 (623 SE2d 767) (2005).

Summers argues that his alleged promise to split the proceeds from the sale of the Tennessee property among his late wife's daughters, as described in the affidavits

8

of Sondra Thomas and her sister, was not supported by consideration and was unenforceable. He further maintains that Sondra Thomas' agreement to relinquish the unenforceable promised gift failed to furnish consideration supporting his alleged agreement to forgive the debt. Given the additional facts alleged in Sondra Thomas' affidavit, however, we need not decide whether the alleged agreement to forgive the debt is supported by consideration.

Sondra Thomas also asserted that shortly after Summers agreed to forgive the debt in 1996, he asked her to make the interest payment the Thomases owed him for the previous year. She complied and wrote him a check for $1500. Summers admits that he received a payment of $1500 from the Thomases on May 1, 1996. "Georgia law is clear that an executory agreement to accept payment of less than the total amount of a liquidated debt is not obligatory without new consideration *or complete performance of the agreement*." (Citations omitted; emphasis supplied.) *Codner v. Siegel*, 246 Ga. 368, 369 (271 SE2d 465) (1980); see also OCGA § 13-4-103 (a)[1];

---

[1] OCGA § 13-4-103 (a) states: "Except as otherwise provided in this Code section, an agreement by a creditor to receive less than the amount of his debt cannot be pleaded as an accord and satisfaction unless it is actually executed by the payment of the money, the giving of additional security, the substitution of another debtor, or some other new consideration." The Georgia Supreme Court, discussing the predecessor to this Code section, explained that it had been construed to mean that "an independent agreement on the part of the debtor that he would, or does, accept

9

*Bartosz*, supra, 271 Ga. App. at 249 (2) (agreement to settle $100,000 debt for $30,000 was not an accord and satisfaction where there was no evidence agreement was executed). Sondra Thomas' affidavit raises an issue of fact as to whether the parties agreed that Summers would forego any further attempts to collect on the Thomases' debt upon payment of a final interest payment in 1996. If such an understanding existed, the debt was extinguished upon the tender and acceptance of that payment. That Summers did not request any further payments from the Thomases until 2010 could be construed as evidence that the parties understood that the debt was forgiven after the 1996 payment.

Because material issues of fact exist as to the affirmative defense of accord and satisfaction, the trial court erred in granting Summers' motion for summary judgment.

*Judgment reversed. McFadden and Ray, JJ., concur.*

---

a part of an undisputed claim as in full settlement, will, when actually effectuated, become binding." *Sylvania Elec. Products v. Electrical Wholesalers*, 198 Ga. 870, 875 (33 SE2d 5) (1945), overruled in part on other grounds by *Rivers v. Cole Corp.*, 209 Ga. 406 (73 SE2d 196) (1952).