**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE and REESE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 8, 2017**

# In the Court of Appeals of Georgia

A17A0753. SHEATS v. THE KROGER CO.

MILLER, Presiding Judge.

This is the second appearance of this case in this Court. In *Sheats v. Kroger Co.*, 336 Ga. App. 307 (784 SE2d 442) (2016) ("*Sheats I* "), we (i) vacated the trial court's denial of plaintiff Brenda Sheats' motion for spoliation sanctions against defendant The Kroger Company ("Kroger"); (ii) reversed the trial court's grant of summary judgment to Kroger on Sheats' claim for ordinary negligence; and (iii) remanded the case for the trial court to (a) reconsider Sheats' spoliation claim in light of the Supreme Court's decision in *Phillips v. Harmon*, 297 Ga. 386 (774 SE2d 596) (2015), and (b) reconsider Sheats' ordinary negligence claim in light of the trial

court's disposition on remand of Sheats' spoliation claim.[1] *Sheats I*, supra, 336 Ga. App. at 311 (1) (a), 313-314 (6). On remand, after considering the factors set forth in *Phillips*, the trial court again denied Sheats' spoliation claim and granted summary judgment to Kroger on Sheats' claim for ordinary negligence. Sheats appeals, contending that the trial court improperly applied the *Phillips* factors to her spoliation claim and that summary judgment in favor of Kroger was not warranted on her ordinary negligence claim. For the reasons that follow, we affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review a trial court's grant of summary judgment de novo, construing the evidence, and all reasonable conclusions and inferences drawn from it, in favor of the nonmovant." (Citations and punctuation omitted.) *Thomas v. Summers*, 329 Ga. App. 250, 250 (764 SE2d 578) (2014); see also OCGA § 9-11-56 (c).

So viewed, and as we stated in *Sheats I*, the evidence shows that:

[O]n November 7, 2011, Sheats was shopping at a Kroger grocery store in Athens. Sheats took a cardboard package containing several glass

---

[1] Our decision in *Sheats I* also addressed several additional claims against Kroger and co-defendant Clayton Distributing Company, Inc. See *Sheats I*, supra, 336 Ga. App. at 307-308. Those claims are not at issue in this appeal.

2

bottles of Red Rock Golden Ginger Ale off a shelf and placed it in her cart. Sheats then lifted a second pack off the shelf. As she did so, the bottom of the package opened up, all of the glass bottles fell to the floor, and they broke. At least one bottle struck Sheats' left foot, injuring her.

A store security guard was called to the aisle where the incident occurred. Upon arriving at the scene, the guard found Sheats standing among broken glass and spilled liquid and holding an empty cardboard package with a bottom that was "fully broken open[ ]." When Sheats told the security guard what happened, the guard asked Sheats to step away from the debris, and she asked for the package Sheats was holding. Sheats refused and told the guard that she wanted to keep the package as evidence. The guard replied that she would keep the package as evidence instead. Sheats then complained to the guard about pain in her foot. The guard offered to call an ambulance, but Sheats declined, saying that she might go to a doctor later.

The guard escorted Sheats to the customer service counter at the front of the store, where Sheats told the store manager what happened. Sheats then told the manager that her left foot was hurting and she was going to the hospital. The manager completed a three-page "Customer Incident Report & Investigation Check List," which had the following statement printed on each page: "This report is being prepared in anticipation of litigation under the direction of legal counsel. It is confidential and is not to be released to any person unless approved by legal counsel and authorized by a member of Kroger management with such authority." The manager told Sheats that he would forward

3

information about the incident to Kroger's headquarters, but he was not sure if Kroger's insurance would pay for treatment of the injury.

Shortly after the incident, the manager inspected the package and the shelf where it had been displayed and observed that both were dry. According to the manager,

> [f]or some unknown reason, the glue on one side of the bottom of the package failed to stay glued to the other flap. I observed that one of the outside bottom flaps was cleanly separated from the other, inside bottom flap, and the glue was only stuck to one flap. It appeared to me that the glue didn't stick sufficiently to the other flap[.]

The manager then inspected all of the other Red Rock Ginger Ale packages on the shelf, but observed no similar problem. After inspecting the package, the manager recorded it, for inventory purposes, as a "lost" item due to breakage and put it with outgoing refuse to be discarded. The manager stated in his affidavit that, when he spoke to Sheats after the incident, he did not get the impression that Sheats would later file a lawsuit.

After leaving Kroger, Sheats went to a hospital emergency room. She was subsequently diagnosed with a blood clot in her left big toe and had to have surgery to remove the toenail. Sheats had to wear a protective shoe for two months after her surgery. Additionally, her toenail failed to grow back correctly, and she still had pain in her toe at the time of the summary judgment hearing.

4

*Sheats I*, supra, 336 Ga. App. at 308-309.

Sheats sued Kroger, asserting various causes of action, including, as relevant to this appeal, ordinary negligence. Sheats also filed a motion for spoliation sanctions based on Kroger's disposal of the ginger ale package before she was able to inspect it. The trial court denied Sheats' spoliation motion on the ground that she had not notified Kroger that she was contemplating litigation before it disposed of the package. Kroger then moved for summary judgment, asserting, in relevant part, that no record evidence showed that the package failure was foreseeable to Kroger. The trial court agreed and granted summary judgment to Kroger.

Sheats appealed, challenging the denial of her motion for sanctions and the grant of summary judgment to Kroger. See *Sheats I*, supra, 336 Ga. App. at 307-308. We vacated the trial court's spoliation ruling, explaining that it "was based on the legally incorrect premise that Kroger's duty to preserve the evidence required actual notice of litigation from Sheats," and remanded the case for the trial court to reconsider the spoliation motion in accordance with the factors set forth in *Phillips*, supra, 297 Ga. at 397-398 (II). *Sheats I*, supra, 336 Ga. App. at 311 (1) (a). Given our ruling on this issue, we also reversed the grant of summary judgment to Kroger on Sheats' ordinary negligence claim, explaining that whether that claim is a jury issue

5

"cannot be determined until the trial court first determines on remand whether spoliation occurred and, if so, which spoliation sanctions are appropriate." Id. at 313 (6).

On remand, after addressing the *Phillips* factors, the trial court again denied Sheats' motion for spoliation sanctions and granted summary judgment to Kroger on her ordinary negligence claim. This appeal followed.

1. In two related enumerations of error, Sheats challenges the trial court's conclusion that no sanctionable spoliation occurred. She contends that, under a proper application of the *Phillips* factors, Kroger had a duty to preserve the cardboard package because it had constructive knowledge that litigation was reasonably foreseeable. We discern no clear error in the trial court's ruling on the facts of this case.[2]

---

[2] Sheats also claims that the trial court "directly contradict[ed]" our ruling in the prior appeal that, according to Sheats, "Kroger should have reasonably anticipated that [she] was contemplating litigation." This contention misreads our prior decision. Our ruling on this issue was limited to the narrow proposition that the trial court erroneously concluded "that Kroger's duty to preserve the evidence required actual notice of litigation from Sheats." *Sheats I*, supra, 336 Ga. App. at 311 (1) (a). There would have been no need for us to remand this case for the trial court to re-examine this issue in light of the *Phillips* analysis had we in fact already made a binding determination as to the outcome of that analysis. See id.

6

"The term 'spoliation' is used to refer to the destruction [of] or failure to preserve evidence that is relevant to contemplated or pending litigation. Such conduct may give rise to the rebuttable presumption that the evidence would have been harmful to the spoliator." (Citations and punctuation omitted.) *Phillips*, supra, 297 Ga. at 393-394 (II); see also OCGA § 24-14-22. This rebuttable presumption may be applied "only in exceptional cases," and "the greatest caution must be exercised in its application." (Citation and punctuation omitted.) *Phillips*, supra, 297 Ga. at 398 (II). "[F]or the injured party to pursue a remedy for spoliation, the spoliating party must have been under a duty to preserve the evidence at issue." (Citation omitted.) Id. at 394 (II). "[T]he duty to preserve relevant evidence must be viewed from the perspective of the party with control of the evidence and is triggered not only when litigation is pending" but also when a defendant "knows or reasonably should know that the injured party, the plaintiff, is in fact contemplating litigation." (Citations omitted.) Id. at 396 (II). In other words, "such notice can be constructive as well as actual." Id.

Crucially, "a trial court has wide discretion in adjudicating spoliation issues, and such discretion will not be disturbed absent abuse." (Citation omitted.) *Phillips*, supra, 297 Ga. at 397 (II). Where a trial court makes findings of fact in ruling on a

spoliation claim, this Court will uphold those findings if there is any evidence to support them, i.e., unless they are clearly erroneous. See *Wright v. VIF/Valentine Farms Bldg. One, LLC*, 308 Ga. App. 436, 441 (2), 443 (2) (a) (708 SE2d 41) (2011); *Bouve & Mohr, LLC v. Banks*, 274 Ga. App. 758, 762 (1) (618 SE2d 650) (2005); accord *Kroger Co. v. Walters*, 319 Ga. App. 52, 55 (1) (a) & (b) (735 SE2d 99) (2012) (concluding that "some evidence" supported the factual findings underlying the trial court's imposition of spoliation sanctions).

The *Phillips* Court set out a non-exclusive list of factors that may be considered in determining whether a defendant had constructive notice that a plaintiff was contemplating litigation. See *Phillips*, supra, 297 Ga. at 397 (II). The Court explained:

> [L]itigation may be reasonably foreseeable to the defendant based on . . . circumstances[] such as the type and extent of the injury; the extent to which fault for the injury is clear; the potential financial exposure if faced with a finding of liability; the relationship and course of conduct between the parties, including past litigation or threatened litigation; and the frequency with which litigation occurs in similar circumstances. Thus, it may be appropriate to consider, in determining whether the defendant actually did or reasonably should have foreseen litigation by the plaintiff, not only what the plaintiff did or did not do after the injury and before the evidence in question was lost or destroyed, but also what

8

the defendant did or did not do in response to the injury, including the initiation and extent of any internal investigation, the reasons for any notification of counsel and insurers, and any expression by the defendant that it was acting in anticipation of litigation.

Id.

### a. Type and extent of the injury

As to the first *Phillips* factor – the type and extent of the injury – the trial court determined that, although Sheats sought emergency room treatment, her injury "did not seem to be extensive," as it was "limited to her big toe." In addition to the evidence relied upon by the trial court, we also note that Sheats testified in her deposition that no bones in her foot were broken and that she was discharged from the hospital on the same evening that she received medical attention. Further, Sheats has identified nothing in the record indicating that the incident resulted in any severe or permanent physical limitations. On this record, the trial court's finding was not clearly erroneous because it is supported by some evidence.

### b. Extent to which fault is clear

With respect to the second factor – the extent to which fault for the injury was clear – the trial court relied largely on the store manager's affidavit. As discussed above, the manager attested that, following the incident, the cardboard ginger ale

9

package and the shelf on which it had been sitting both were dry, and all other packages of the same product on the shelf were intact. He observed that one of the package's bottom flaps had "cleanly separated from the other" and surmised that the glue between the flaps had not sufficiently held them together. The manager noted that this issue was not evident when the package was being stocked on the display shelf and that, if a problem had become apparent at that time, the package would have been removed. The manager also attested that, in the 18 years he had worked for the grocery store, he had never encountered this type of package failure, and he knew of no one who had been injured in a similar incident. Consequently, the manager "had no reason to expect or anticipate that the package would come apart." Based on the manager's affidavit, the trial court concluded that Kroger need not reasonably have anticipated being found at fault for Sheats' injury.

The evidence above supports this determination. On appeal, Sheats has identified nothing in the record indicating that the package failure was reasonably foreseeable to Kroger. Given the manager's affidavit, the trial court did not clearly err in finding that (a) the manager had no reason to believe that Kroger could have foreseen and prevented the package failure and (b) for this reason, the manager had no reason to believe that Kroger could be found liable for Sheats' injury.

10

Sheats contends that Kroger's very act of disposing of the package forecloses any determination as to whether the package would have revealed that its failure was foreseeable to Kroger and that Kroger therefore should be sanctioned for disposing of it. Although we acknowledge that the facts of this case arguably present a "catch-22" for Sheats on this *Phillips* factor, we also note that she was free to offer testimony as to anything she – or any other witnesses, for that matter – may have observed that appeared obviously amiss with the ginger ale packaging or display. Absent any such record evidence, the trial court did not clearly err in relying on the store manager's affidavit to conclude that the package failure was not reasonably foreseeable to Kroger.

### c. Potential financial exposure

Turning to the third factor – the potential financial exposure if faced with a finding of liability – the trial court determined that Sheats' medical bills arising out of the injury totaled less than $2,500 and that she lost wages in the amount of $200. Sheats does not challenge the trial court's findings in this respect, but contends that "the potential financial exposure could greatly exceed" these amounts, given that she suffered a blood clot, required surgery to remove her toenail, and endured a "two-month recovery time." However, the record contains no indication that Kroger

11

learned of the full extent of Sheats' injury and the treatment she required before it disposed of the package. To the contrary, immediately following the incident, Sheats declined the security guard's offer to seek immediate medical treatment, and there is no evidence that she manifested any physical limitations at the time. Consequently, Sheats has not established clear error on this issue.

### d. Course of conduct

With respect to the fourth factor, it is undisputed that there is no evidence of a course of conduct, including past or threatened litigation, between the parties.

### e. Frequency of similar litigation

As to the fifth factor – the frequency of litigation in similar circumstances – the trial court determined that there was no history of this type of an accident, and, accordingly, there had been no previous litigation arising from similar circumstances. Sheats contends that the court applied an unreasonably narrow interpretation of "similar circumstances" limited to "a person's big toe injured by a falling soda bottle." The plain language of the trial court's order, however, does not support Sheats' claim that the court used the phrase "similar circumstances" so narrowly. The court's conclusion in this regard is more properly viewed in light of the manager's affidavit, in which he attested that he was unaware of a customer or employee who

had been injured "by a package failure like the one involved with this ginger ale." Thus, the trial court's reference to "similar circumstances" appears more properly to refer generally to objects falling as a result of similar packaging failures, rather than the narrow reading urged by Sheats. On the record in this case, the trial court's finding on this issue is not clearly erroneous.

### f. Defendant's response to the injury

Finally, Sheats highlights the "anticipation of litigation" language pre-printed on the "Customer Incident Report & Investigation Check List" used by the manager to memorialize the incident. Sheats contends that "Kroger should be bound by the language it chose to place" on this form.

The very fact that Kroger produced this document during discovery – rather than seeking to protect it as privileged – suggests that Kroger did not itself treat the document as if it in fact had been created in anticipation of litigation. See *Chua v. Johnson*, 336 Ga. App. 298, 304 (2) (784 SE2d 449) (2016) (a qualified privilege protects from disclosure documents "'prepared in anticipation of litigation . . . by or for another party'") (quoting OCGA § 9-11-26 (b) (3)). Indeed, the store manager attested that he completed the incident report "per the normal and customary practice" and that, had he believed that Sheats was contemplating litigation at that time, he

13

would have said so in his report. Moreover, if we were to construe the pre-printed report language as strictly as Sheats requests, this would require courts to ignore the *Phillips* Court's instruction that multiple factors may be considered in determining whether litigation was reasonably foreseeable. See *Phillips*, supra, 297 Ga. at 397 (II). On this record, the trial court had latitude to determine that (a) the incident report form (with the pre-printed "anticipation of litigation" language) routinely was used to report customer incidents, regardless of whether litigation was anticipated, and (b) as a result, the pre-printed language did not, by itself, outweigh the other factors that the court considered in concluding that Kroger need not reasonably have anticipated being sued or found at fault for Sheats' injury. See id. at 397 (II), n. 9 ("The defendant's duty [to preserve evidence] does not arise *merely* because the defendant investigated the incident, because there may be many reasons to investigate incidents causing injuries . . . .").

### g. Conclusion

Given the record in this case, the trial court was entitled to resolve each of the *Phillips* factors it considered in favor of Kroger. Consequently, the trial court did not clearly err when it determined that litigation was not reasonably foreseeable to Kroger. See *Phillips*, supra, 297 Ga. at 396-397 (II); *Wright*, supra, 308 Ga. App. at

14

441 (2), 443 (2) (a); *Bouve & Mohr, LLC*, supra, 274 Ga. App. at 762 (1). We again emphasize that when examining the trial court's decision, this Court must apply a "necessarily deferential standard of review." *Wal-Mart Stores, Inc. v. Lee*, 290 Ga. App. 541, 546 (1) (659 SE2d 905) (2008). Accordingly, we conclude that the trial court did not abuse its wide discretion when it denied Sheats' request for spoliation sanctions. See *Phillips*, supra, 297 Ga. at 396-397 (II). We therefore affirm the trial court's ruling on this issue.

2. Sheats also challenges the grant of summary judgment to Kroger on her ordinary negligence claim. Sheats contends that a material issue of fact remains with respect to whether the package was defective and whether Kroger negligently maintained an unsafe package display. We disagree.

As stated above, our review of a grant of summary judgment is de novo. See *Thomas*, supra, 329 Ga. App. at 250. Where, as here, the moving party shows that there is an absence of evidence to support the nonmoving party's case, "the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue." (Citation omitted.) *Ellison v. Burger King Corp.*, 294 Ga. App. 814, 819 (3) (a) (670 SE2d 469) (2008). "[S]peculation which raises merely a conjecture or possibility is not sufficient to create even an inference

15

of fact for consideration on summary judgment." (Citation and punctuation omitted.) Id.

"The essential elements of a negligence claim are the existence of a legal duty; breach of that duty; a causal connection between the defendant's conduct and the plaintiff's injury; and damages." (Punctuation omitted.) *Wilcher v. Redding Swainsboro Ford Lincoln Mercury, Inc.*, 321 Ga. App. 563, 565-566 (1) (743 SE2d 27) (2013).

> [T]he situation of the retailer and consumer of packed products is properly governed by the rules of negligence law. Accordingly, retailers owe consumers a duty to supply goods packed by reliable manufacturers, which are without imperfections that may be discovered by an exercise of the care, skill, and experience of dealers in such products generally.

(Citations and punctuation omitted.) *Sheats I*, supra, 336 Ga. App. at 313 (6).

However,

> a retailer who is not the manufacturer of an item is under no obligation to test an article, purchased and sold by him, for the purpose of discovering latent or concealed defects, [and] when he purchases and sells in the usual course of trade, an article in common and general use, without knowledge of its dangerous quality, and with *nothing tending*

16

*reasonably to call his attention thereto*, he is not negligent in failing to exercise care to determine whether it is dangerous or not.

(Footnote and punctuation omitted.) *Wilcher*, supra, 321 Ga. App. at 570 (2).

Specifically, Sheats highlights the following evidence in support of her ordinary negligence claim: (i) several bottles fell through a cardboard package as she lifted it off of a shelf; (ii) the package was dry and otherwise intact; and (iii) it appeared to the manager that glue on the package had not sufficiently held it together. Sheats asserts, therefore, that there existed sufficient evidence substantiating that the packaging was defective. Nevertheless, even assuming all of these facts to be true, they shed no light on whether, before the package failed, Kroger had any information that would have put it on notice of the impending failure.[3] To the contrary, the manager attested that the problem with the package was not evident while the display shelf was being stocked and that he did not discover any similar problems with any of the other ginger ale packages. Moreover, as discussed above, Sheats offered no

---

[3] It is undisputed that Kroger did not manufacture the package at issue. Moreover, in our prior opinion in this case, we affirmed the trial court's grant of summary judgment to Kroger on Sheats' res ipsa loquitur claim, as it was undisputed that the package had not been under Kroger's exclusive control. See *Sheats I*, supra, 336 Ga. App. at 312 (4).

17

testimony as to anything she or any other witness saw that would have alerted Kroger to problems with the packaging or display.

Absent some record evidence that Kroger should have been on notice of a potential package failure, there is no basis on which a jury could find that Kroger breached a duty it owed to Sheats, other than through speculation and conjecture. See *Wilcher*, supra, 321 Ga. App. at 565-566 (1), 570 (2); *Ellison*, supra, 294 Ga. App. at 819 (3) (a); *Sirmons v. Derst Baking Co.*, 221 Ga. App. 127, 127-129 (470 SE2d 515) (1996) (no evidence showed that a defect in a food product, which the manufacturer delivered to the distributor and retailer in a sealed package, was or should have been known to the distributor and retailer). Consequently, the trial court properly granted summary judgment to Kroger on Sheats' ordinary negligence claim.

For each of the above reasons, we affirm the judgment of the trial court.

*Judgment affirmed. Doyle and Reese, JJ., concur.*